UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ISAIAH BRITTON                                                  15-cv-3659 (RRM)(RLM)

                         Plaintiff,                              **AMENDED COMPLAINT**

      -against-                                           **JURY DEMAND**

CITY OF NEW YORK, POLICE OFFICER
PETER LAZARE (Shield #5579), POLICE
OFFICER ERNEST KENNER (Shield #8756)
and POLICE OFFICER DERRICK SAMBOLIN
(Shield # 6906),

                        Defendants.
-------------------------------------------------------x

      Plaintiff, by his attorney, Law Office of Philip Akakwam, P.C., complaining of the defendants, City of New York, P.O. Peter Lazare (Shield #26342), P.O. Ernest Kenner (Shield #8756) and P.O. Derrick Sambolin (Shield #6906) (collectively "defendants"), upon information and belief alleges as follows:

## INTRODUCTION

      1. This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

      2. Plaintiff seeks monetary damages for: the false arrest, false imprisonment, use of excessive force and malicious prosecution of Plaintiff and otherwise, for the violation of his federally guaranteed constitutional and civil rights. Plaintiff seeks whatever other relief is appropriate and necessary in order to serve the interest of justice and assure that his remedy is

full and complete.

## JURISDICTION

3. The jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343[3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction. Plaintiff requests that the Court invoke pendent jurisdiction over any and all claims arising under the laws and Constitution of the State of New York.

5. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff, a black male, is a resident of Brooklyn Kings County, State of New York.

7. Defendant, City of New York is a municipal entity existing under the laws and Constitution of the State of New York and was the public employer of the defendant police officers through its Police Department and the actions of the police officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

8. Upon information and belief and at all times relevant herein, defendants P.O. Peter Lazare, P.O. Ernest Kenner (Shield #8756) and P.O. Derrick Sambolin (Shield #6906) were police officers employed by the defendant City of New York.

9. Defendant officers were employed by defendant City of New York through its police department.

10. Plaintiff is suing the defendant officers in their individual and official capacities.

## NOTICE OF CLAIM

11. Plaintiff, in furtherance of his state causes of action, filed timely notice of claim against the City, in compliance with General Municipal Law Section 50.

12. More than 30 days have elapsed since service of said notice, and the City has failed to pay or adjust the claim.

## FACTS COMMON TO ALL CAUSES OF ACTION

13. On or about March 20, 2014, at approximately 1:30 p.m., plaintiff was inside the storage room in his building located at 753 MacDonough Street, Brooklyn, New York when he was assaulted and arrested by defendant officers.

14. On the date and time aforesaid, plaintiff had gone inside the storage room located across the hallway from his apartment to get some bags of clothes and other items which he had kept in the storage room. Plaintiff's father was the superintendent of the building and he had earlier opened the door to the storage room to enable plaintiff take out his clothes. Plaintiff's father regularly allows plaintiff and other occupants of the building to put some of their excess personal stuff in the storage room.

15. While plaintiff was inside the storage room, about three police officers came and started banging on the front door of the storage room. When plaintiff heard the banging, he advised whoever was banging to go talk to his father, the superintendent, in apartment 1E.

16. After plaintiff told them to go talk to his father, the officers broke down the front door of the storage room and pounced on plaintiff with their guns drawn. They threw plaintiff to the floor, punched and kicked him on various parts of his body including his head, face and back.

One of the officers kneed plaintiff in the face as plaintiff was lying on the floor and another officer placed his feet on plaintiff's chest.

17. Then the officers said to plaintiff "where are the guns?" Plaintiff told them that he did not have any guns or weapons. One of the officers called for back-up and later more police officers arrived.

18. The officers handcuffed plaintiff to his back and picked him up from the floor. They continued to ask plaintiff where he had the guns. And plaintiff continued to tell them that he did not know what they were talking about and that he did not have any guns.

19. Then plaintiff was placed in a police vehicle by defendant officers who thereafter transported him to the 73rd Precinct where he was detained in a holding cell.

20. On his way to the precinct, plaintiff continued to ask why he was being arrested but the two officers who were driving him to the precinct told him that they were not his arresting officer and could not tell him the reason for his arrest.

21. While plaintiff was still in the holding cell at the precinct, the arresting officer came to plaintiff and, for the first time since the beginning of the encounter with plaintiff, advised him that he was arrested for possession of marijuana.

22. The officer claimed that they had found marijuana in some stuff in the storage room. Plaintiff told him that he did not have any marijuana in any of his stuff in the room. Plaintiff further advised the officer that the stuff in the storage room belonged to many different tenants living in the building. The officer told plaintiff that he should go tell that to the judge.

23. At the precinct, plaintiff was searched, fingerprinted and photographed. It was after the fingerprinting that plaintiff was advised that there was an outstanding warrant against him for

non payment of a traffic fine.

24. Plaintiff was detained in the holding cell at the precinct until early morning the following day when he was taken to the Central Booking where he was further detained in a holding cell until he was brought before a judge.

25. Plaintiff was charged with unlawful possession of marijuana, trespass and criminal trespass. Upon arraignment, plaintiff was released on his own recognizance. Plaintiff was released late at the night the following day March 21, 2014.

26. Following his release, plaintiff was required to return to court on numerous occasions to defend the false charges levied against him.

27. On or about June 25, 2014, all the charges levied against plaintiff were dismissed upon the motion of the District Attorney.

28. That each and every officer who responded to and/or was present at the location of plaintiff's arrest and/or at the precinct or facility knew and was fully aware that plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

29. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

30. Plaintiff suffered physical injuries, including cuts, bruises and lacerations on his elbow and shoulder. Moreover, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, loss of liberty, psychological trauma, pain, financial loss and damage to reputation as a consequence of the defendants' unlawful conduct alleged herein.

31. Also, following his arrest, plaintiff was suspended for two weeks from his

employment as Administrative Assistant at National Rehabilitation Institute which provides substance abuse programs. Plaintiff was later fired from his job as a result of his false arrest.

32. Plaintiff suffered violations of his federally guaranteed constitutional and civil rights including rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

33. Defendant Officers acted together and in concert sanctioning and ratifying and otherwise condoning the wrongful actions being taken by each of the defendant Officers in a collective manner and fashion.

34. Plaintiff has no other adequate remedy at law but for this action.

## AND AS FOR A FIRST CAUSE OF ACTION:
## 42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT

35. Plaintiff reiterates paragraphs 1 through 34 and incorporates such by reference herein.

36. By their conduct and under color of law, defendant officers deprived plaintiff of his constitutional right to be free from false arrest and false imprisonment.

37. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AND AS FOR A SECOND CAUSE OF ACTION:
## 42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE

38. Plaintiff reiterates paragraphs 1 through 37 and incorporates such by reference herein.

39. By their conduct and under color of law, defendant officers deprived plaintiff of his constitutional right to be free from excessive and unreasonable force.

40. As a direct and proximate result of the misconduct detailed above, plaintiff sustained

the damage herein before stated.

### AND AS FOR A THIRD CAUSE OF ACTION: MALICIOUS PROSECUTION

41. Plaintiff reiterates paragraphs 1 through 40 and incorporates such by reference herein.

42. Plaintiff was subjected to malicious prosecution and malicious abuse of the criminal process in violation of his right under the Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

43. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damage herein before stated.

### AND AS FOR A FOURTH CAUSE OF ACTION

**(Monell/42 U.S.C. Section 1983: Claim Against Defendant City of New York)**

44. Plaintiff reiterates paragraphs 1 through 43 and incorporates such by reference herein.

45. The foregoing violations of plaintiff's federal constitutional rights and resultant injuries were directly and proximately caused by conduct, chargeable to defendant City, amounting to deliberate indifference to the constitutional rights of persons, including plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

46. The defendant City, through its police department, the NYPD, has developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of plaintiff's rights.

47. It was the policy and/or custom of the City to undertake inadequate and improper investigations of civilian complaints of police misconduct and to punish inadequately officers involved in complaints which were substantiated.

48. Both Internal Affairs Bureau (IAB) and the Civilian Complaints Review Board

(CCRB) have substantially failed in their responsibilities to investigate misconduct and to discipline transgressors. The IAB investigations of brutality rarely lead to any administrative trials and, in the rare instances that charges are sustained administratively, the punishment is minimal and lacking any deterrent effect.

49. Acts of brutality have been tolerated by the defendant City which has been on notice for a long time that brutality is widespread and that particular reforms need to be implemented.

50. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in narcotics, drugs, guns and/or other illicit activities.

51. In or about October 2011, one Detective Stephen Anderson testified under oath that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

52. And Judge Gustin Reichbach of the New york Supreme Court, Criminal Term, has determined that the NYPD's drug unit has a system of flawed procedures and a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at

what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

53. In addition to the named defendant officers assigned to the 73rd precinct, many other officers assigned to the Precinct routinely make unlawful arrests charging innocent persons with various crimes. Many of the arrests and charges made by officers assigned to the 73rd Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

54. The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs were implemented or tolerated by policymaking officials for defendant City including but not limited to, the New York City Police Commissioner, who knew or should have known that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases.

55. Defendant City failed to provide proper training and/or failed to insure that the training provided was adequately understood in regard to the following tasks which police officers commonly perform:

    (a)    The determination of probable cause to make an arrest;

    (b)    The duty to take into account the totality of the circumstances in determining the existence of probable cause to make an arrest;

    (c)    The very limited circumstances under which a warrantless search may be carried out.

56. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing

of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when there is probable cause for such arrest.

57. The policymaking officials at NYPD know or ought to have known that such issues that regularly arise in the investigation and prosecution of criminal cases either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations and making the wrong choice.

58. The aforementioned policymaking officials knew that the wrong choice by police officers concerning determination of probable cause will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

59. As a result of inadequate training of police officers on the practical meaning of probable cause for arrest, officers frequently detain and/or arrest citizens based on their hunches, inklings, or mere suspicion and without reasonable or probable cause.

60. As part of its policies, customs and practices, Defendant City has failed to take proper corrective and punitive actions against overreaching police officers thus creating the impression that crime reduction is paramount and triumphs over constitutional rights in all circumstances.

61. As a direct and proximate result of the City's policies and deliberate indifference, defendants violated plaintiff's constitutional rights causing plaintiff to suffer substantial

damages.

## AND AS FOR A FIFTH CAUSE OF ACTION
### (Negligent Hiring, Training and Supervision Under State Law; Defendant City)

62. Plaintiff reiterates paragraphs 1 through 61 and incorporates such by reference herein.

63. By virtue of the foregoing, defendant City of New York is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NYPD with regard to their aforementioned duties.

64. As a direct and proximate result of the acts and omissions of the defendants described in this Complaint, plaintiff suffered a significant loss of his liberty and violation of his federal constitutional rights, was prevented from attending to his necessary affairs and suffered and continues to suffer significant physical and emotional pain, distress, humiliation and embarrassment.

## AND AS FOR A SIXTH CAUSE OF ACTION:
### 42 U.S.C. § 1983 - CONSPIRACY

65. Plaintiff reiterates paragraphs 1 through 64 and incorporates such by reference herein.

66. Defendant officers and other John Doe police officers acting under color of law, conspired with one another to deprive plaintiff of his constitutional rights, including the rights: to be free from intentional use of unreasonable force; to be free from unlawful searches and seizures; to have access to and seek redress in the courts; and to be free from false arrest and false imprisonment.

67. It was part of the conspiracy that the defendant officers physically assaulted plaintiff while her hands were cuffed behind his back.

68. In furtherance of the conspiracy and in order to cover up the acts of brutality, defendants fabricated and contrived false criminal charges against plaintiff.

69. Defendant officers submitted false police reports and statements to support and corroborate the fabricated charges lodged against plaintiff.

70. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damage herein before stated.

### AND AS FOR AN SEVENTH CAUSE OF ACTION: PENDENT CLAIM OF ASSAULT AND BATTERY

71. Plaintiff reiterates paragraphs 1 through 70 and incorporates such by reference herein.

72. By their conduct, as set forth above, defendant officers committed acts of battery against plaintiff which included beating, punching and kicking him about the face and body without cause. The use of physical force against plaintiff was willful, unwarranted, and excessive.

73. The defendant City is responsible for the excessive and unnecessary force used by the defendant officers as set forth above because the misconduct occurred while they were acting in the scope of their employment, specifically in the course of arresting plaintiff.

74. Upon information and belief, defendant City had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City failed to take any appropriate actions to assure plaintiff's safety and security and failed to protect and/or safeguard plaintiff's interests.

75. By reason of and as a consequence of the assault detailed above, plaintiff suffered severe and serious physical and mental injuries.

### AND AS FOR A EIGHT CAUSE OF ACTION:
### PENDENT CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT

76. Plaintiff reiterates paragraphs 1 through 75 and incorporates such by reference herein.

77. Plaintiff was wrongfully, unlawfully and unjustifiably charged, arrested, detained and deprived of his liberty against his will, and was imprisoned by defendant officers and other unknown John Doe police officers.

78. At all relevant times, the defendant officers acted forcibly in apprehending plaintiff.

79. The wrongful, unjustifiable, and unlawful arrest, detention and imprisonment of plaintiff was carried out without a warrant.

80. The false and unlawful arrest and imprisonment of plaintiff was without any justification or probable cause, and was forcible and against his will.

81. All of the foregoing occurred without any fault or provocation on the part of plaintiff.

82. At all relevant times, the defendant officers and other John Doe police officers who were responsible for the false arrest and imprisonment of plaintiff were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

83. As a direct and proximate result of the false arrest and imprisonment of plaintiff as detailed above, plaintiff sustained the damage herein before stated.

### AND AS FOR A NINTH CAUSE OF ACTION
### PENDENT CLAIM OF GROSS NEGLIGENCE

84. Plaintiff reiterates paragraphs 1 through 83 and incorporates such by reference herein.

85. The conduct of the defendant officers in falsely arresting, detaining and battering

plaintiff was grossly negligent and intended to cause plaintiff to suffer severe injury and extreme mental and emotional distress.

86. At all relevant times, said defendant officers were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

87. As a direct and proximate result of the false arrest and imprisonment of plaintiff as detailed above, plaintiff sustained the damage herein before stated.

### AND AS FOR AN TENTH CAUSE OF ACTION
### PENDENT CLAIM - RESPONDENT SUPERIOR

88. Plaintiff reiterates paragraphs 1 through 87 and incorporates such by reference herein.

89. At all relevant times, all defendant employees of the City of New York were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

90. Consequently, the City is liable under the doctrine of *respondeat superior* for their tortious actions.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

i. For compensatory damages in an amount to be determined at trial - against all defendants, jointly and severally;

ii. For punitive damages against the individual defendants in an amount to be determined at trial;

iii. For reasonable attorneys' fees, together with costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

    iv.       For pre-judgment interest as allowed by law; and

    v.       For such other and further relief as the court deems just and proper.

Dated: Brooklyn, New York
       January 20, 2016

                                LAW OFFICE OF PHILIP AKAKWAM, P.C.

                By:           /s/
                      Philip Akakwam, Esq.
                      Attorneys for the Plaintiff
                      303 Livingston Street, 2nd Floor
                      Brooklyn, N.Y. 11217
                      (718) 858-2488